THE FOLLOWING ORDER
IS APPROVED AND ENTERED
AS THE ORDER OF THIS COURT:

DATED: July 9, 2018



Brett H. Ludwig
United States Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF WISCONSIN**

| IN RE: Larry Hopson, | Case No. 17-27269-bhl |
|---|---|
| Debtor. | Chapter 13 |

| Larry Hopson, | Adv. Nos. 18-2010, 18-2011, 18-2012 |
|---|---|
| Plaintiff, | 18-2013, 18-2014, 18-2015 |
| v. | 18-2016, 18-2017, 18-2018 |
| City of Milwaukee, | 18-2019, 18-2020 |
| Defendant. | |

**DECISION AND ORDER**

Chapter 13 debtor Larry Hopson and the City of Milwaukee disagree about the value of seven of Hopson's rental properties in the City. These valuation disputes are at the center of the City's objection to Hopson's Chapter 13 plan and give rise to multiple adversary proceedings through which Hopson seeks to establish reduced values for the properties and, in doing so, reduce the amount of the City's secured claims for unpaid property taxes.[1] The court consolidated the valuation disputes for resolution at a May 14, 2018 evidentiary hearing and

---

[1] The parties also dispute the interest rate applicable to the City's claims. The City insists that it is entitled to 12% interest pursuant to 11 U.S.C. §511 and Wis. Stat. §74.47(1). Hopson questions the applicability of section 511. In response to Hopson's request to brief the issue, the court set a briefing schedule, but Hopson did not file a brief. Based on the plain terms of section 511, the court concludes that the City is entitled to 12% interest on its claims, consistent with Wis. Stat. §74.47.

adversary trial at which the parties offered evidence and argument concerning the value of the seven rental properties. This decision and order sets forth the court's findings and conclusions on the valuation disputes.

## BACKGROUND

Hopson filed a Chapter 13 petition on July 25, 2017. According to his August 10, 2017 schedules, Hopson owns numerous properties in the City both individually and through two limited liability companies. On his Schedule I, Hopson discloses combined monthly income of $16,483.07, nearly all of which comes from renting real estate.

The City filed a proof of claim on September 25, 2017, later amending it on October 2, 2017 and January 26, 2018. According to the latest amendment, Hopson owes the City $532,493.15 for unpaid real estate taxes on more than a dozen parcels, including the seven properties that remain disputed in this proceeding.[2] The City asserts tax liens to secure its claims and seeks payment of 12% interest on its claims. The City's asserted tax liens and the latest (2016) assessed values of the disputed properties are summarized below.

|  | Property Address | Tax Lien | 2016 Assessed Value |
|---|---|---|---|
| Case No. 18-2010 | 2955-2957 N. 14th St. | $28,353.07 | $20,200.00 |
| Case No. 18-2012 | 2340-2342 N. 44th St. | $46,324.65 | $45,600.00 |
| Case No. 18-2015 | 3256-3258 N. 27th St. | $48,182.13 | $40,600.00 |
| Case No. 18-2016 | 3320 W. Clybourn St. | $31,810.10 | $45,600.00 |
| Case No. 18-2017 | 2739-2741 N. 41st St. | $30,522.45 | $58,200.00 |
| Case No. 18-2018 | 3032-3034 N. 24th Pl. | $36,847.65 | $20,900.00 |
| Case No. 18-2020 | 2564 N. 11th St. | $26,228.77 | $28,000.00 |

---

[2] Hopson owes back real estate taxes on 16 properties in the City. Hopson has disputed the valuations and tax liens on eleven of those properties. Of those eleven disputed properties, Hopson and the City report having resolved their disputes relating to four properties, leaving the values of seven properties for resolution by the court.

On August 10, 2017, Hopson filed a plan of reorganization. He proposed plan amendments on October 4, 2017 and January 7, 2018. Hopson's plan proposes to reduce his overall payments to the City by reducing the City's secured claims on the disputed properties. Citing 11 U.S.C. §§506(a), 1322(b)(2), and 1325(a)(5)(B)(ii), Hopson contends that the City's claimed tax liens exceed the fair market values of the disputed properties. He seeks to reduce the amount of the City's secured claim on each disputed property to the fair market value of that property, rendering the balance of the City's claim on that property unsecured. His plan further provides that the tax liens will be satisfied and discharged upon the payment of the reduced amounts, and he would pay only 5.5% interest on the claims. To effectuate his effort to reduce his payments to the City, Hopson filed adversary proceedings against the City seeking orders authorizing his proposed treatment of the properties at issue.

The City objected to Hopson's plan. The City disputes Hopson's suggestion that his properties are worth less than the City's tax liens and maintains that its claims should remain fully secured. The City took the same position in answering all of Hopson's adversary complaints.

## LEGAL CONTEXT

These valuation disputes arise in conjunction with the City's objection to confirmation of: Hopson's Chapter 13 plan and Hopson's adversary proceedings. Accordingly, these are core proceedings pursuant to 28 U.S.C. §157(b)(2)(K) and (L) and the court has jurisdiction pursuant to 28 U.S.C. §§157 and 1334.

The City's objection to Hopson's plan is based on section 1325(a)(5). This section requires, as a condition to confirmation, that a debtor's plan provide for distributions to the holder of an allowed secured claim that are not less than the allowed amount of the secured claim, unless the holder consents to less favorable treatment or the debtor surrenders the property

securing the claim. Here, the City has not consented to less favorable treatment and Hopson has not proposed to surrender the seven properties at issue. Accordingly, to confirm his plan, Hopson must establish that the City will receive distributions not less than the value of its allowed secured claim on each of the disputed properties.

Hopson's adversary complaints seek to reduce the allowed amount of the City's secured claims on the seven disputed properties. The amount of the City's allowed secured claim on each property is determined in accordance with section 506(a), which provides for the bifurcation of an ostensibly secured claim into "secured" and "unsecured" portions if the value of the creditor's collateral is less than the amount of its claim. *See Associates Commercial Corp. v. Rash*, 520 U.S. 953, 117 S. Ct. 1879 (1997) (interpreting §506(a) in connection with establishing the allowed amount of a creditor's secured claim for purposes of §1325(a)(5)).

Section 506(a) directs the court to value the collateral "in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest." In the context of a Chapter 13 plan in which the debtor proposes to keep collateral for purposes of earning income, the Supreme Court has directed that replacement value is the proper general standard. *Rash*, 520 U.S. at 963, 117 S. Ct. at 1885-86 (1997) ("Of prime significance, the replacement-value standard accurately gauges the debtor's 'use' of the property. It values 'the creditor's interest in the collateral in light of the proposed [repayment plan] reality: no foreclosure sale and economic benefit for the debtor derived from the collateral equal to … its [replacement] value.' The debtor in this case elected to use the collateral to generate an income stream. That actual use, rather than a foreclosure sale that will not take place, is the proper guide under a prescription hinged to the property's 'disposition or use.'" (alteration in original)(citation omitted)).

## VALUATION FINDINGS AND CONCLUSIONS

At the May 14 hearing, Hopson argued that all seven disputed properties should be valued below the City's assessments. He testified that all of the properties are in poor condition and require "a lot of work." He explained that he purchased many (perhaps all) of the properties at foreclosure sales and that even at the time of purchase the properties were "not in great shape." He identified numerous property defects, which he characterized as both "structural" and "cosmetic." He also confirmed receiving numerous "write-ups" from the City for problems. He provided few details, but identified issues with roofs, siding, gutters, porches, fences, garages, and landscaping.

Hopson's efforts to minimize the values of his properties were undercut, however, by his insistence that all of the properties are of sufficient quality to be fit to rent to tenants. He testified that his tenants are not being neglected and that he works with them to provide livable housing. All told, Hopson's testimony was not persuasive.

Hopson also relied on the expert testimony of Mary Jumes, who prepared Broker Price Opinions (BPOs) on each of disputed properties. Jumes' testimony was more helpful than Hopson's. Jumes is an experienced realtor who has spent nearly 25 years as a licensed real estate agent dealing with properties in the metro-Milwaukee area. She explained that she has prepared hundreds of BPOs over the last two decades.

But Jumes' expert testimony also holds limited persuasive power. She admitted that she drove past each of the subject properties and surveyed their immediate neighborhoods, but she did not review any of the interior of any of the properties. Indeed, she explained that she often prepares market analyses that are more detailed that BPOs, but that she was not asked to do so for any of the properties at issue. And she (forthrightly and correctly) admitted that she is not an

appraiser and "does not pretend to be" one. Jumes' BPOs were somewhat mechanical reports prepared using multiple listing service sales and listing data, coupled with her judgments concerning comparable sales in what she considered the same area of each property. Jumes' valuations also suffered from using foreclosures and distressed sales as comparable-value properties. The Supreme Court has instructed that for section 506(a) purposes, the fair market value of a property the debtor intends to retain should not be based on a distressed sale. *Rash*, 520 U.S. at 963, 117 S. Ct. at 1885-86 (noting "actual use, rather than a foreclosure sale that will not take place, is the proper guide").

The City relied upon expert testimony from Michael Weitkum, a Certified Residential Appraiser employed at Chudnow Druck Valuation, Inc. Weitkum prepared detailed appraisal reports for each of the properties. His reports describe each subject property, including improvements, and analyze comparable sales used to arrive at each valuation. Many of his opinions result in values that are below the City's assessed values for the properties, suggesting he was not simply providing opinions to support the City's position. In the end, the court found Weitkum's testimony the most compelling of the three witnesses who testified.

## SPECIFIC VALUATION CONCLUSIONS

1. **2955-2957 North 14th Street**

Hopson testified that this unique property – which includes two separate buildings on a single city lot – needed a lot of work as of the petition date. He identified problems with the siding, windows, porches, and a "missing" balcony. But he insisted that both buildings are habitable and his schedules show that he receives $2,200 in monthly rental income from multiple units in the two buildings. The City asserts a $28,353.07 tax lien on this property, which has an assessed value of $20,200.00.

The parties' experts offered competing valuations using different comparable sales.

Based on her BPO analysis, Hopson's expert testified that the property's value is only $6,800. Her analysis included comparable sales ranging from $2,500 to $10,000. The City's appraiser testified to a market value of $25,000, based on three comparable sales.

The court finds the City's valuation more credible. The City's appraiser testified that the property was in average condition, with no major necessary repairs noted. He confirmed that the property was comparable to other rental buildings in the area. Hopson's proposed valuation was less credible, as it was based on a BPO and not a full appraisal. The court concludes that the fair market value for the property located at 2955-2957 North 14th Street is $25,000.

### 2. 2340-2342 North 44th Street

Hopson testified that this is a six-bedroom duplex that "needs a lot of work." He has received "write-ups" from the City on the property. Hopson identified a number of cosmetic issues that require attention, including problems with the painting, siding, garage, fence and landscaping. He complained that the costs of these repairs exceed the price he would receive for selling the property. But he confirmed that his tenants were happy with the property. His schedules show that he receives $1,300 in monthly rent for the two units. The City asserts a $46,324.65 tax lien on this property, which has an assessed value of $45,600.00.

The parties' experts offered competing valuations using different comparable sales. Based on her BPO analysis, Hopson's expert testified that the property should be valued at only $21,400. She identified a potential sales range of $7,500 to $36,700. The City's appraiser testified to a market value of $37,000 (a reduction of more than $8,000 from the City's assessed value). He identified five comparable sales of $38,500, $34,000, $29,500, $26,500, and $41,000.

The court finds the City's valuation more credible. The City's appraiser testified that the property was in average condition and credibly explained his valuation methodology. Hopson's

proposed valuation was less credible, as it was based on a BPO, not a full appraisal. The court concludes that the fair market value for the property located at 2340-2342 North 44th Street is $37,000.

### 3. 3256-3258 North 27th Street

Hopson testified that this is a triplex in a particularly hard-to-rent area of the city. He reported struggling with tenants who "don't keep the property up" and about having to make repairs constantly. According to his schedules, the property generates $1,750 each month ($21,000 annually) in rental income. Hopson admitted that he has owned the property for about ten years, but has not replaced the roof or any of the major mechanicals during that time. The City asserts a $48,182.13 tax lien on this property, which has an assessed value of $40,600.00.

The parties' experts offered competing valuations using different comparable sales. Based on her BPO analysis, Hopson's expert testified to a recommended value of $22,578. She acknowledged having a difficult time finding comparable sales within the same neighborhood. The City's appraiser testified to a market value of $37,000 (a reduction of more than $3,000 from the City's assessed value). He identified three comparable sales of $37,000, $20,300, and $33,500.

The court finds the City's valuation more credible. The City's appraiser testified that the property was in average condition and credibly explained his valuation methodology. Hopson's proposed valuation was less credible. It was based on a BPO, not a full appraisal, and his expert acknowledged difficulty finding comparable sales. Her analysis carries less force than the City's appraisal. The court concludes that the fair market value for the property located at 3256-3258 North 27th Street is $37,000.

### 4. 3320 West Clybourn Street

Hopson's schedules show this single-family four-bedroom home rents for $1,100 per month. As with most of his properties, Hopson testified that this property is not in great shape and that he has owned it for about ten years since buying it at a foreclosure sale. He explained that the property needs painting and roof work and that the gutters need to be replaced, but admitted that there are no structural problems and that, while he has had to repair the furnace and hot water heater, both work. The City asserts a $31,810.10 tax lien on the 3320 West Clybourn Street property, which has an assessed value of $45,600.00.

The parties' experts offered competing valuations using different comparable sales. Based on her BPO analysis, Hopson's expert testified that the property should be valued at only $28,000. She conceded she was only able to identify a single comparable, which limited her valuation. The City's appraiser testified to a market value of $40,000. He agreed that finding comparable sales was very difficult, but ultimately identified three comparable sales of $28,000, $52,000, and $69,000.

The court finds the City's valuation more credible. Both experts identified issues with finding comparable sales, but the City's value is based on the more rigorous analysis of a licensed appraiser. Moreover, Hopson's expert acknowledged that the results of her approach caused her to "weep a little bit," because the property has lots of potential. The court finds that the fair market value of the property at 3320 West Clybourn Street is $40,000.

### 5. 2739-2741 North 41st Street

Hopson testified that this is a duplex in poor condition. He bought the property at a foreclosure sale and identified needed repairs to siding, windows, a porch, and a missing balcony on the back of the property. Hopson's schedules show that he receives $1,500 in monthly rent

for the two units.  The City asserts a $30,522.45 tax lien on this property, which it assessed value at $58,200.00.

The parties' experts offered competing valuations using different comparable sales. Based on her BPO analysis, Hopson's expert testified that the property should be valued at only $25,533.  Using three comparable sales, she identified a potential sales range of $13,000 to $33,500.  The City's appraiser testified to a market value of $39,000 (a reduction of nearly $20,000 from the assessed value).  He identified five comparable sales of $33,300, $38,500, $34,000, $29,500, and $41,000.

The court finds the City's valuation more credible.  Unlike Hopson's expert, the City's appraiser viewed both the interior and exterior of the building and explained that the exterior issues did not affect the usefulness of the living space.  The court finds that the fair market value of the property at 2739-2741 North 41st Street is $39,000.

### 6.  3032-3034 North 24th Place

Hopson testified that he purchased this property from foreclosure and it was in "poor condition."  He has received "write-ups" from the City on the property and identified problems with the exterior painting, roof, and gutters.  Hopson confirmed the property's mechanical equipment is functional, with an old but working furnace and water heater.  The City asserts a $36,847.65 tax lien on this property, which it assessed in 2016 at $20,900.00.

The parties' experts offered competing valuations and used much different comparable sales.  Based on her BPO analysis, Hopson's expert testified that the property should be valued at only $12,833, based on three comparable sales of similar properties for $22,000, $3,000, and $4,200.  The City's appraiser testified to a market value of $21,000.  He identified comparable sales of $22,000, $18,004, and $21,500.

The court finds the City's valuation more credible. Hopson's proposed value is based on a BPO, not a full appraisal, and the BPO relies upon foreclosure sales as "comparable" sales. The court concludes that the fair market value of the property located at 3032-3034 North 24th Place is $21,000.

### 7. 2564 North 11th Street

Hopson testified that this duplex needs work, including painting, landscaping, and roof and porch repairs. His schedules show that he receives $1,200 in monthly rent from the two units. The City asserts a $26,228.77 tax lien on this property, which has an assessed value of $28,000.00.

The parties' experts offered competing valuations using different comparable sales. Based on her BPO analysis, Hopson's expert testified that the property should be valued at only $12,094. She relied upon two comparable sales, one of which was a $2,500 foreclosure sale. The City's appraiser testified to a market value of $25,000. He identified three comparable sales of $24,900, $21,688, and $28,000.

The court finds the City's valuation more credible. Hopson's proposed valuation was less credible, as it was based on a BPO, not a full appraisal. Moreover, the value was based on at least one distressed foreclosure sale. The court concludes that the fair market value of the property located at 2564 North 11th Street is $25,000.

## CONCLUSIONS

The City's objection to confirmation is sustained. The value of the properties on which the City has tax liens are greater than the amount of the tax liens for two of the seven properties, and the City's claims are fully secured. The values of the collateral are lower than the amount of the tax liens on five of the seven properties, and section 1322(c)(2) permits the modification of

those claims with a resulting "cramdown" to the present values of those five properties. The debtor will have 30 days to file an amended Chapter 13 plan consistent with this decision.

**ORDER**

For the reasons stated above, IT IS HEREBY ORDERED:

1. The City of Milwaukee's claim for $28,353.07 secured by 2955-2957 North 14th Street, Milwaukee, Wisconsin (Adv. No. 18-2010), shall be bifurcated, and shall be treated as an allowed secured claim in the amount of $25,000, to be paid by the trustee in equal monthly payments as required by 11 U.S.C. §1325(a)(5)(B)(ii), over 60 months at 12% interest. The remaining amount of the claim shall be allowed as an unsecured claim, to be paid by the trustee in accordance with the treatment of all other unsecured claims.

2. The City of Milwaukee's claim for $46,324.65 secured by 2340-2342 North 44th Street, Milwaukee, Wisconsin (Adv. No. 18-2012), shall be bifurcated, and shall be treated as an allowed secured claim in the amount of $37,000, to be paid by the trustee in equal monthly payments as required under 11 U.S.C. §1325(a)(5)(B)(ii), over 60 months at 12% interest. The remaining amount of the claim shall be allowed as an unsecured claim, to be paid by the trustee in accordance with the treatment of all other unsecured claims.

3. The City of Milwaukee's claim for $48,182.13 secured by 3256-3258 North 27th Street, Milwaukee, Wisconsin (Adv. No. 18-2015), shall be bifurcated, and shall be treated as an allowed secured claim in the amount of $37,000, to be paid by the trustee in equal monthly payments as required under 11 U.S.C. §1325(a)(5)(B)(ii), over 60 months at 12% interest. The remaining amount of the claim shall be allowed as an unsecured claim, to be paid by the trustee in accordance with the treatment of all other unsecured claims.

4. The City of Milwaukee's claim for $31,810.10 secured by 3320 West Clybourn Street, Milwaukee, Wisconsin (Adv. No. 18-2016), shall be treated as an allowed secured claim in the full amount, to be paid by the trustee in equal monthly payments as required under 11 U.S.C. §1325(a)(5)(B)(ii), over 60 months at 12% interest.

5. The City of Milwaukee's claim for $30,522.45 secured by 2739-2741 North 41st Street, Milwaukee, Wisconsin (Adv. No. 18-2017), shall be treated as an allowed secured claim in the full amount, to be paid by the trustee in equal monthly payments as required under 11 U.S.C. §1325(a)(5)(B)(ii), over 60 months at 12% interest.

6. The City of Milwaukee's claim for $36,847.65 secured by 3032-3034 North 24th Street, Milwaukee, Wisconsin (Adv. No. 18-2018), shall be bifurcated, and shall be treated as an allowed secured claim in the amount of $21,000, to be paid by the trustee in equal monthly payments as required under 11 U.S.C. §1325(a)(5)(B)(ii), over 60 months at

12% interest. The remaining amount of the claim shall be allowed as an unsecured claim, to be paid by the trustee in accordance with the treatment of all other unsecured claims.

7. The City of Milwaukee's claim for $26,228.77 secured by 2564 North 11th Street, Milwaukee, Wisconsin (Adv. No. 18-2020), shall be bifurcated, and shall be treated as an allowed secured claim in the amount of $25,000, to be paid by the trustee in equal monthly payments as required under 11 U.S.C. §1325(a)(5)(B)(ii), over 60 months at 12% interest. The remaining amount of the claim shall be allowed as an unsecured claim, to be paid by the trustee in accordance with the treatment of all other unsecured claims.

IT IS FURTHER ORDERED:

1. The City's objection to confirmation of Hopson's plan is sustained.

2. The debtor shall file an Amended Plan within 30 days from the entry of the Order that provides for treatment of the City's claims as set forth above.

3. If the cramdown value(s) is/are paid in full at 12% interest prior to discharge, the lien(s) will not be released until discharge is granted.

4. In accordance with the preceding conditions, upon successful completion of the debtor's Chapter 13 plan and entry of an Order of Discharge under 11 U.S.C. §1328(a), the City shall record a release of the lien(s).

# # # # #